```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------x
                                        18-CR-419(BMC)
UNITED STATES OF AMERICA,
                                        United States Courthouse
                                        Brooklyn, New York

          -against-                     September 04, 2019
                                        2:30 p.m.
XUE QU,

          Defendant.

------------------------------x

          TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
             BEFORE THE HONORABLE BRIAN M. COGAN
                  UNITED STATES DISTRICT JUDGE

APPEARANCES

For the Government:        UNITED STATES ATTORNEY'S OFFICE
                           Eastern District of New York
                           271 Cadman Plaza East
                           Brooklyn, New York 11201
                           BY:  WILLAM CAMPOS, ESQ.
                                ROBERT KAFTAL, ESQ.
                                JAMES YOON, ESQ.
                           Assistant United States Attorneys

For the Defendant:         DEMIDCHIK LAW FIRM
                           136-18 39th Avenue
                           Flushing, New York 11354
                           BY:  D. GARTH SULLIVAN, ESQ.



Also Present:              STEPHANI LIU, Mandarin Interpreter
                           JENNIFER BAUMANN, Probation




Court Reporter:            Rivka Teich, CSR, RPR, RMR, FCRR
                           Phone:  718-613-2268
                           Email:  RivkaTeich@gmail.com

Proceedings recorded by mechanical stenography.  Transcript
```

1 produced by computer-aided transcription.

*Rivka Teich CSR, RPR, RMR FCRR*
*Official Court Reporter*

1           (In open court.)

2           THE COURTROOM DEPUTY:  All Rise.

3           THE COURT:  Good afternoon.  Have a seat.

4           COURTROOM DEPUTY:  United States V. Qu, 18-CR-419.

5           Counsel state your appearances.

6           MR. CAMPOS:  For the United States, William Campos,

7   Special Assistant United States Attorney Robert Kaftal, Trial

8   Attorney from the computer crime and electrical property

9   section, James Yoon.

10          MS. BAUMANN:  Jennifer Baumann from Probation.

11          MR. SULLIVAN:  Garth Sullivan for the defendant.

12          THE COURT:  Has the interpreter been sworn?  Yes.

13  We have a Mandarin interpreter interpreting for the defendant

14  who has been previously sworn.

15          We are on for sentencing.  Let me start by reviewing

16  with you the papers that I read in preparing for this

17  sentencing.  I will ask defense counsel if you have not gone

18  over with your client any of the papers I recite, let me know

19  and we'll give you whatever time you need to do that, okay.

20          MR. SULLIVAN:  Certainly.

21          THE COURT:  I'll start with the PSR, the presentence

22  investigation report, dated June 25, 2019.  There are two

23  addenda to that report, one dated July 3rd and one dated

24  July 31.  I have the defense sentencing memorandum with

25  exhibits next to it of July 15.  I have the Government's

1    sentencing memorandum of July 30.  And then I have a separate
2    sealed filing from the Government also dated July 30.
3             Anything else I ought to be reviewing?
4             MR. CAMPOS:  The Government doesn't believe so, your
5    Honor.
6             MR. SULLIVAN:  No, Judge.
7             THE COURT:  Mr. Mottola, what you've been over all
8    those documents with your client?
9             MR. SULLIVAN:  I'm aware that Mr. Mottola has gone
10   over them.  I'm actually appearing on his behalf.
11            THE COURT:  I'm sorry, your name again?
12            MR. SULLIVAN:  Garth Sullivan.
13            THE COURT:  Next let's talk about the facts that
14   will control the sentencing.
15            I received no objections to the description of the
16   offense and the offender characteristics as set forth in the
17   PSR; and therefore, unless I'm missing something I'm going to
18   adopt those sections as my findings of fact for purposes of
19   this hearing.  Is that okay with everyone?
20            MR. SULLIVAN:  Yes.
21            MR. CAMPOS:  Yes.
22            THE COURT:  Let's next turn to the guidelines, which
23   are of course advisory and only one factor for me to consider
24   in determining the appropriate sentence.  I tend to go along
25   with the parties, I think the loss estimate in a case like

1   this is hard to put a number on.  If the parties are willing
2   to agree to one, and it's within reason, which I think it is,
3   I'm inclined to adopt it.  If I do that, I think we have an
4   offense level 19, a criminal history of one, that would give
5   us a guideline sentencing range of 30 to 37 months.  Does that
6   sound right?
7               MR. CAMPOS:  Correct, your Honor.
8               MR. SULLIVAN:  Yes, your Honor.
9               THE COURT:  Let me hear from the parties as to all
10  of the applicable sentencing considerations.  I'm going to
11  start with the defense Mr. Sullivan.
12              MR. SULLIVAN:  Well, Judge, as Mr. Mottola pointed
13  out in his memorandum, Ms. Qu has lived in the country for
14  about 25 years.  She's married with three children, limited
15  education, two adult children, one child in college.  Her
16  involvement in this was simply more a matter of a desire to
17  help support her family.  And really coming from a foreign
18  background and lack of education contributed to her
19  involvement.
20              THE COURT:  Anything further?
21              MR. SULLIVAN:  No, Judge.
22              THE COURT:  All right.  Ms. Qu, is there anything
23  that you would like to say?
24              THE DEFENDANT:  No.
25              THE COURT:  All right.  Let me hear from the

1    Government.
2              MR. CAMPOS:  Your Honor, the Government would rely
3    mostly on its sentencing submission.  If the Court wants to
4    inquire further, we're happy to address that.
5              I would just say that as the Court is well aware,
6    many items were brought in to the United States by shipping
7    container.  This defendant is responsible for three of those
8    40-foot shipping containers once they were in the United
9    States.
10             THE COURT:  Over what period of time was that?  I
11   know the conspiracy was about five years, how long was she
12   involved.
13             MR. CAMPOS:  We think she was involved during that
14   period of time.
15             THE COURT:  Okay.
16             MR. CAMPOS:  And the 40-foot shipping containers,
17   hundreds, thousands, of goods had to be distributed which this
18   defendant did.  We're certainly not suggesting that this
19   defendant had a large role in the scheme, but we didn't think
20   that a minor role or minimal role adjustment was appropriate
21   either.  We think that the fact that we did have, not used the
22   manufactured suggested retail price as we wrote because we
23   think that overstates the severity of the crime.  And we used
24   a reasonable estimate as to the wholesale value and thereby
25   discounts already the guidelines.

1     Consequently, your Honor, the Government stands by
2  its letter, and thinks that among other things a substantial
3  fine ought to be part of the sentence.
4     THE COURT: The minimum is $10,000, do you think
5  that's substantial?
6     MR. CAMPOS: Your Honor, I don't think that, under
7  our agreement I don't think we --
8     THE COURT: I'm not asking you to advocate, but you
9  said there should be a substantial fine, I'm asking you if
10 10,000 is substantial? I don't think that violates your plea
11 agreement.
12    MR. CAMPOS: The Government has agreed to a $90,000
13 forfeiture amount. Certainly an equal amount would be
14 substantial.
15    THE COURT: Okay. I have one more question I wanted
16 to ask you, Mr. Campos, it seems to be you kind of undercut
17 your own sentencing case when you asked me to use as an
18 analogy the Su Ming Ling case that was before Judge Amon. As
19 your letter itself shows the, goods involved in that case had
20 a manufacturer suggested retail price of nearly $300 million
21 as opposed to $45 million. Mr. Ling was also a category
22 three, I'm dealing with a category one. And perhaps most
23 importantly, Mr. Ling was convicted on two charges, including
24 importing not just the distribution that we have here.
25    So if he gets 30 months, how am I giving

1    non-disparity sentences to give this defendant the 30 months
2    that you've requested?
3              MR. CAMPOS:  I think that's an important
4    consideration, Judge.  I thought it was important to bring the
5    sentence to the Court's attention because we've had -- I think
6    in this courthouse we haven't had that many of these types
7    cases.  And consequently, I think it was just important to
8    bring that to the Court's attention.
9              The distinctions that the Court makes are valid
10   distinctions.  I could only say that here the facts militate
11   in some substantial sentence, only because the length of time,
12   the involvement of this defendant although smaller, and the
13   fact that we've already discounted, the Government has
14   discounted the guidelines by discounting from the MSRP.
15             Of course the Court can disregard that and consider
16   that even if the Government advocated for the $45 million MSRP
17   that is a much less than that other case.
18             I think it's important to bring that to the Court's
19   attention, and the Court will do with it what it will.  But
20   since there are so few here, we needed to bring that to your
21   attention.
22             THE COURT:  Okay.  I mean, I'm not sure I agree with
23   you, but it's your choice.  It's not controlling authority.
24             MR. CAMPOS:  It's certainly not controlling.
25             THE COURT:  I don't think it's comparable for the

1  reasons I said, but if you feel the need to tell me, I'm happy
2  to hear it.  That's fine.
3          I've considered all the applicable sentencing
4  factors, including the advisory guidelines.  I think looking
5  at this defendant, a guideline sentence is way more than
6  necessary to promote the other goals of 3553(a).
7  Nevertheless, I do think a custodial sentence is necessary
8  both for specific deterrence and general deterrence for the
9  following reasons.
10         First, as Mr. Campos points out, this is a long
11 scheme, long.
12         Second, the defendant is not a person without some
13 assets.  She has a million dollars value house that appears to
14 be free and clear of mortgages.  She didn't need to do this.
15 I know extra money helps, but it wasn't as if, I see some
16 defendants who are driven to it by impoverishment, that is not
17 the case here.
18         In addition, I'm particularly troubled by the fact
19 that on previous occasions she was arrested for -- let me make
20 sure I get the exact crimes right --trademark counterfeiting
21 twice.  And illegal entry, which I don't really hold against
22 her, it was quite a long time ago.  But the fact that she has
23 two trademark counterfeiting arrests, not convictions but
24 arrests, leads me to believe that it should have been harder
25 for her to deceive herself into thinking that this would be

1   okay and this would simply slip under the radar.

2          On the other hand, she's 52 years old.  I don't
3   think she's going to repeat this kind of conduct because she
4   doesn't have to engage in this kind of conduct.  So I want to
5   be careful not to impose more of a sentence than is necessary
6   to accomplish all the purposes that the statute sets forth.

7          So for those reasons I'm going to sentence the
8   defendant as follows:

9          Twelve months and one day of custody.

10         An order of restitution, which will be in the amount
11  of $25,000 payable to LMVB, Louis Vuitton.  I'm going to leave
12  the restitution part of the judgment open for 90 days to see
13  if the other victim intends to put anything in.

14         I'm going to impose a fine of $50,000.

15         And I'm going to impose a term of -- I have
16  previously signed the order of forfeiture.  I'm going to
17  impose a term of supervised release of two years with the
18  following special conditions:

19         First, she's got to comply with the order of
20  restitution and the forfeiture provision.  She's got to give
21  full financial disclosure to the probation office, that
22  includes her tax returns any co-mingled income she has.  To be
23  fully cooperative in that.  She has to give authorizations if
24  they are required by the Probation Department, so it can get
25  her financial interests.  She cannot take out any mortgages or

place any liens on the house or any other property she owns, unless probation approves of it first.

I recognize she may have to take out a mortgage on the house to meet her forfeiture fine and restitution obligations. Did I say the fine?

MR. CAMPOS: $50,000.

THE COURT: I'm going to put --

MR. CAMPOS: The forfeiture, sorry, your Honor. The forfeiture you ordered was for $90,000.

THE COURT: A search condition on this because she does have the two prior arrests enabling probation upon a finding of reasonable suspicion to enter her person or property or house or residence at any reasonable time and place and in a reasonable manner to see if she is in possession of any contraband. If she doesn't submit to the search it will be a violation of supervised release and she may be returned to custody.

In addition I'm going to require as a special condition that she has to cooperate and abide by all instructions of the immigration authorities. And if she is deported or removed she may not enter the United States illegally.

I think we had open counts here, did we not?

MR. CAMPOS: Yes, your Honor. The Government moves to dismiss those counts.

1           THE COURT:  All right.  Anything further?  That
2    motion is granted.  Anything further before I advise her of
3    her appellate rights?
4           MR. SULLIVAN:  No, your Honor.
5           MS. BAUMANN:  The other matter is the special
6    assessment fee.
7           THE COURT:  Thank you very much.
8           Special assessment of $100 based on the one count of
9    conviction.
10          Ms. Qu you have waived your right to appeal your
11   conviction and your sentence based on your plea agreement.
12   Nevertheless, if you think that something was fundamentally
13   unfair or unjust about the proceedings, you may attempt to
14   appeal.  If you do want to appeal you have to get what is
15   called a notice of appeal filed within 14 days of the entry of
16   judgment.  If you don't do that, then you have waived any
17   possible right to appeal that you have.  Your lawyer can file
18   it for you.  Or if you can no longer afford your lawyer and
19   you certify that to the clerk of the court, the clerk will
20   file it for you.  Or you can get a one-page form and file it
21   yourself.  But how ever you do it, it will remain your
22   responsibility to see that that notice of appeal gets filed in
23   14 days, no one else's responsibility.  Because as I said, if
24   you don't do that, you will have no right to appeal at all.
25          Let's talk about a surrender date.  What would you

*Rivka Teich CSR, RPR, RMR FCRR*
*Official Court Reporter*

1 like, Mr. Sullivan?

2     MR. SULLIVAN:  Thirty days, your Honor.

3     THE COURT:  Is that okay with the Government?

4     MR. CAMPOS:  The Government has no objection to

5 that.

6     THE COURT:  All right.  That would put us then on

7 October 5, is that a weekday?

8     COURTROOM DEPUTY:  That's a Saturday, October 7 is

9 the Monday.

10     THE COURT:  October 7, 10:00 a.m. to the Marshals

11 here, unless she has been previously designated, then she may

12 surrender to the place of designation.

13     MR. CAMPOS:  She hasn't been previously designated,

14 so it should be here.

15     THE COURT:  In the next four weeks before she

16 surrenders she may be designated.

17     Let's set a date by which the Government has to give

18 me any more restitution evidence.  Mr. Campos, I don't like

19 doing that.  I like the Government to chase the victims

20 harder.  At some point I'm going to say in a case, you know, a

21 victim didn't come forward, I'll make sure they have enough

22 time but they don't want to be heard I'm not going to enter

23 restitution, because I don't know how much.  But I'm going to

24 give another 30 days for that, not the full 90.  See if you

25 can get anything; unless it's contested, I'll add that.

*Rivka Teich CSR, RPR, RMR FCRR*
*Official Court Reporter*

1            MR. CAMPOS:  So the same October 7 date?

2            THE COURT:  Correct.

3            Anything else?

4            MR. SULLIVAN:  No, your Honor.

5            MR. CAMPOS:  No, your Honor.

6            THE COURT:  Thank you.  We are adjourned.

7            (Whereupon, the proceedings concluded.)

*Rivka Teich CSR, RPR, RMR FCRR*
*Official Court Reporter*